Good morning, Your Honors. I am Paul Leahy, Pro Bono Counsel for Appellant Patrissa Santos, as well as her son Anthony and Alex O'Here, President and Court. As the Court is aware, this is an appeal from a 12B6 motion to dismiss the Appellant's first amended complaint. This motion was the first adjudication of the Appellant's complaint in this action. And as the Court knows, we must accept the allegations as true and construe the pleadings in light most favorable to the Appellant. Also, since she was a pro se, the pleadings should be held to a less stringent standard. This is her first attorney as a pro bono attorney, and as you know, this appeal had been going on for a while until I got involved as well. The facts are undisputed that the Appellant was a biologically related maternal aunt with a significant longstanding bonded family relationship of over seven years before these events occurred. She was also designated by the county as a prospective adopted parent approximately five years prior to these events of this case. And she had an adoption petition pending four months before the children were fraudulently removed from her on some guise of respite care. The defendants characterized her merely as a foster parent or a contractual caregiver, but its well-established family unit that they had where they bonded themselves together for seven years was established at that time. Well, assuming that her biologic and custodial characteristics gave her a liberty interest, assuming that, doesn't this really turn on whether the law was clearly established that she did have a liberty interest? Yes, Your Honor, and it was well-established by July 19th, 2001. Family relationships such as... Like what? Okay. First, a family unit was more than just a biological mother and father discussed in Moore v. Cleveland, Prince v. Massachusetts, and even in Smith v. Offer, which counsel argues had indicated that there is an indication it would be more than just a family unit. And in California's law, positive law sources which counsel identifies can make a clearly established law, Jenny N., Janique W. clearly provided a procedural due process right, and the case of CBC v. County of Sacramento, all cited in the briefs, provided clear protections for due process protections under the 14th Amendment for those rights. Also, the Adoptions and Safe Families Act of 42 U.S.C. 675 identified her as a pre-adoptive relative caregiver, and that was a 1997 statute. The Family Code Section 8704B, which was formerly Civil Code Section 224N, established in 1953, required at that time and to this present date a noticed motion with a – with affidavit supporting the reasons why for a removal and then a court order before. Well, yeah. I mean, I understand what California – the California statute says, but doesn't Campbell make it very clear that the law was not clearly established, that she had a liberty interest arising under the Due Process Clause that is entitled to that protection? Well, at the time – That doesn't say she should have gotten notice. I mean, the statute, let's assume, says she should have gotten notice. She didn't. Pardon me? She did not. She did not get notice of any of these. She did not have a proceeding of any nature. Well, she didn't have one before Albert was removed. As well as – After that, there was a ton of process, right? Approximately five months – three months later, she then filed proceedings under 388, which was different than what should have been done in the adoption process. Sure. But the State of California gives her a lot of avenues for redress for not having gotten notice to begin with, right? Correct. The mandatory statutory duty that the county had was to provide that hearing to her before they took the children. So like in May v. County of San Bernardino, where they took the child without exigent circumstances, here they took the child without a court order at all. Okay. And doesn't Campbell make it very clear that the law was not clearly established, that – Well, if you look at the statutes themselves, 8704 and 42 U.S.C. 675, what they're talking about at that point in time is established family relationships. And the whole intent of those statutes were to provide security to family units. The cases of Moore v. Cleveland back in the 70s indicated that, frankly, it's not just a husband and wife or a mother and father, it's more than that. It's a family unit. That's a tradition in our society that's been out longstanding. Yeah, but you're not – see, to me, this thing turns on Campbell. I mean, your argument turns on it because Campbell says that apart from prison regulations, no State statute is going to create a federally protected liberty interest. I mean, they said that. Well, I recognize that's what Campbell may say, Your Honor, but the fact that – Well, and we're stuck with it, whether it's right, wrong, or indifferent. I believe that actually the Safe Families Act comes in in 1997. The whole process of adoption is a big issue in our country. That act comes into effect and identifies that we need to preserve not just mother-father relationships and child relationships, but the relationships such as a prospective adoptive parent, a relative adoptive. And that statute in 1997 identifies – Actually, Mullins pretty much says that there is no liberty interest in an adoptive parent – pre-adoption situation, right? I don't believe that. No, Mullins is saying that just because you're a biological parent – Grandparent. A grandparent. Just because you have that biological link doesn't automatically make you the situation. And in the course of doing that, pointed out that pre-adoptive parents have no liberty interest. Well, I disagree, Your Honor. I believe that that case is essentially saying that there wasn't that – just the link, just the blood doesn't make it. What it says is that if you have more – it leaves open the fact that if you have more than just a blood relationship, but a longstanding relationship, such as seven years as this case, then that's a family unit. We're saying that our relatives sit there. You have someone living with you for seven years. You take care of them. You're the only parent that Albert ever has known for six weeks of his life on forward. And then you've got this established relationship. The law was clear that there are just procedural due process protections at that time, and it's established a public policy that we ensure that these rights are not just taken away from them on the willy-nilly desires or ideas of a social worker who at this point in time comes into the court or doesn't come into court, essentially subverts the court process as required. Why else would 8704 be there? Why else would 42 U.S.C. 675 be there? Why else would the W&I Code Section 366.25 be there to allow that a relative have a preference and have their petition beforehand? This is a person who had a petition for adoption processed by the county through an attorney provided to them at O'Melvenia Myers, and they knew about it. And then they just decided at some point in time to decide to drop the process because they decided foster care would be the better process. But they didn't get court approval for that. They didn't get any approval for that. And then they didn't tell my client about it and then obtain the children from her. But where's Albert now? Where's the child now? Albert now is essentially with the paternal grandparents who he was adopted to approximately a year after the taking of the children. And that's why my client's 388 petitions with the juvenile court were then essentially dropped because of the fact that that adoption went through. She should have had notice of that process under the Safe Families Act. She should have had an opportunity to have her own petition taken care of beforehand. But as a result of that process, the court said it's moved because the child's already been adopted and we're not going to change that adoption. And that's what the Court of Appeals did to her on that case in Ray Albert G. I just want to make one other point to the court that my client has stated Monell causes of action in the court, although inartfully. And if it is the choice of this court that it would be amended, that complaint could be amended to show on Monell action. But it does identify that a policy and practice essentially to avoid the statutory mandatory duties that are provided to protect people such as my client. And I'll reserve my last minute. Thank you. Ms. Brenner. Thank you, Your Honor. Good morning, Your Honors. Anita Susan Brenner for Pelley's County of Los Angeles and three social workers. The record considered by the magistrate and approved in the opinion by the district judge, in this case it's unusual because it consists of a lot of evidence. There were documents lodged. I don't understand at all. I mean, I don't get how you can make a decision in a 12b6 motion based upon lodging, not filing, a whole bunch of things that we don't even have. That's correct. There are documents referenced in the opinion that are not made part of the record on appeal, which would have been the appellant's burden. But there are also records in the record. It has nothing to do with anything. It's not in the record, period. They were lodged. They were lodged with the court. They're not filed, and yet there's a court decision based on them. I just guess I don't get it. Well, without arguing that, Your Honor, in addition, there are documents that were filed by the appellant. And from those — I thought you reversed just for that reason alone. No, but I wish to point out a few facts based on those declarations that contradict what counsel has argued. First of all, this is a maternal great aunt who argues that her rights, if genetics give a liberty interest and the law says they do not, that her rights are greater than grandparents. But the record — No, I don't think that's quite what she's saying. She's saying she has rights. It may be for a court to determine who has greater rights or who's the more appropriate adoptive parent. But she was not simply some relative with a biological connection that had never seen this child and came in and said, he's mine. This is somebody who had a biological connection and had essentially the whole child's existence under her care and custody. But there are three essential facts about that relationship I wish to point out to the court. The first is that the document submitted by the appellant, specifically page 220 in our supplemental excerpts, submitted as a declaration in her opposition papers, consists of a confidential psychiatric report or evaluation of minor Albert that she submitted not under seal and she is a pro per. But it states that appellant vacillated from — about adopting Albert since 1996. And the records submitted by her also include letters from her attorney, her own attorneys at Gibson Dunn, urging her to complete the adoption. And she didn't do it. Is what you're talking about in the complaint or is it in these papers that are lodged, whatever that means? Her first amended complaint has exhibits attached to it. And in opposition to records, she submits other exhibits. The letter from her attorneys urging her to complete the adoption is at page 312 of our supplemental excerpt. So if one looks at the timeline, first of all, this is not an aunt. This is a great aunt. This is not the only parent at the time she began that process based on the documents she submitted to the district court. She was married. And so the second parent was her husband. At the critical time here, she had been vacillating since 1996 to about 2001 over whether or not to adopt. The reason was, as stated by her in several declarations and letters submitted in this record, that she needed an additional $400 a month for daycare, that she had gone through a divorce, that all three children were special needs, that she had been forced to sell her house and move in with her own father. And at the critical moment, and this gets to whether the social workers knew that the steps they took to protect these children violated a clearly established liberty interest. At that point, she tells her social workers, my father, with whom I am living, wants me out of here. I have these three children. And at that point, they offer respite care. And that's in the very documents that she submits. So the question is, did the social workers --. defenses or explanations why it was a good idea at the time, but the allegations contained in the complaint aren't those explanations, the allegations in the complaint, specifically with regard to the respite care, for example, that it wasn't respite care. They were taken and that was it. This wasn't a time out. This was, in effect, custody being taken away and never intended to be returned to her and never was returned to her. Well, assuming that the inferences and presumptions- What I'm really getting to here, the issue isn't whether the allegations are true or not. The issue for us is whether her relationship was sufficient to give her a protected interest. And the explanations offered by the social workers for why they did, I'm not sure I understand how that connects up with the nature of her interest. Maybe the merits of the decision as to whether to take the children, but her interest is what her interest is. But the record below, by the appellant's own choosing, consists of not just pleadings, but many, many documents that state these facts. But putting those facts aside, it is clear even from her own allegations. Let me ask the court this. Let me propose, with all due respect, to question the court. If an individual has a child in their custody from 1996 to 2001, in their physical custody, and they elect not to conclude the adoption proceedings, what are the limits that are clearly established on that social worker to act in the interest of the child? It's correct that from the moment the children- to what interest does that woman, in this case the plaintiff, have in the children? What liberty interest, what protectable interest does she have? In particular, to what extent is she entitled to notification and an opportunity to speak to issues? You say that she, and bring in repeatedly, that she had hesitations, had doubts, stopped the adoption proceeding. That's all well short of saying that she was pushing the children off to somebody else and saying, I'm not interested in maintaining a relationship with these children. I'm not even interested in maintaining custody, because there's no indication that I've heard from you or seen in the papers that she didn't intend to maintain custody. I'm not arguing that, Your Honor. Then the liberty interest question seems to me a somewhat different one than the one that you're trying to pose to us. Well, on one hand, the social workers have a primary obligation to the child, and it's the social workers have to act in the interest of the child. And does that mean that by acting in the interest of the child, nobody else could have an interest in the matter, that nobody else is required to be given a notification? No, but this case before this Court is one of a series of lawsuits. And the fact of the adoption by the grandparents of Albert was taken through the dependency courts in the State. It was appealed by the appellant, and she did not succeed in her appeal. But she was told kind of too little, too late. And I think her claim here is, you know, if I'd been gotten into the process at the right time at the beginning, maybe I wouldn't have been too late. Maybe it wouldn't have been moot by the time I spoke up. But what the Court of Appeals says is it's moot, it's too late, the adoption's done. Well, I mean, I think if the Court is only looking at the amended complaint and none of the exhibits attached to the original complaint, none of the exhibits attached in argument by the appellant, then it does limit the record. But be that as it may, I would agree with Judge Reimer that under Mullins, if a grandparent does not automatically have a liberty interest, why would a great aunt? And is that — it's not just what the liberty interest is, but is it clearly established? My question is suggesting that she doesn't have any. What I'm saying is that assuming a liberty interest, the issue is whether these folks are entitled to qualified immunity, to which you basically said nothing. But Norg answered the question that I posed to you at the beginning, which is that when you grant a motion to dismiss, considering documents that are not in the record, why isn't that enough in and of itself to cause this thing to go back for relook? It is — it would suffice only if the arguments — it would succeed only if the arguments — it would succeed only if Mullins and Campbell and Family Code 8704 — You know, real — you know, forget the law. Okay. Just forget it. Focus on what happened here. You've got a motion to dismiss, which has to be resolved on the pleadings or exhibits attached to the pleadings, or if other stuff is relied upon, it's converted to a summary judgment after notice. Okay? Here, the ruling itself plainly, in terms, relied upon documents which are being referred to as a lodgment, whatever that word means. A lodgment which was lodged but not filed isn't part of the record, isn't available for appellate review. So as far as I know, the magistrate judge relied upon the funny papers. Except for the fact that the court has — I don't know that. How do I know that? No, but this court has a lot of documents that are part of the record on appeal, and they were all submitted by the appellate. On a motion to dismiss, under 12b-6, you look at the complaint. That's it. And when you get beyond that, you're automatically in summary judgment where you can look at all those things. What if the — What happened? That's fine, but the point is it didn't. It incorporated some. Sure, they were attached. But it didn't incorporate whatever is in the lodgment. And I don't know that the term lodgment is — or lodge is anywhere in the Federal Rules of Civil Procedure. Maybe it is, but if it is, I've missed it. Well, and the court also — the court may also have taken judicial notice of the published California opinion. Enri Albertje. Okay. Do you have any other questions?  Thank you, Your Honor. All right. Thank you, Mr. Brenner. Mr. Clay. Thank you, Your Honor. I'll be very quick because I have a very long time. Your Honor, this is not a mere biological link. We have an established family unit supported by statute. You did talk about Mullins, and note we do have an adoption pending, so we stepped up contrary to what counsel was saying. She wasn't vacillating. She was going forth with her adoption. They just cut her off beforehand. And I looked at Mullins in the sense that the procedural component of the Due Process Clause protects more than just fundamental rights. It protects all liberty interests that are derived from state law or from the Due Process Clause itself. And citing the Hewitt and Browning, what we're asking this Court to find is that this is a motion to dismiss, filed by a pro se, on several causes of action. If the Court believes that it needs to be amended further for the different causes of action, such as Minnell, that will be done. This is the first adjudication of this case, and this woman has not had the benefit of legal counsel throughout the proceedings until now. We ask that the Court find that the due process rights of this party were established at that point in time by state and federal statutes and case law, that there was not only due process rights, but also a fundamental liberty interest that was involved that's established by those statutes. It's implicit in those statutes, the federal and the state statutes, that such rights would be protected by people that need those rights protected from social workers and others with arbitrary governmental interference. This is a motion to dismiss. We ask the Court to allow this pro se appellant to proceed as a plaintiff with counsel  Thank you, Your Honor. Thank you, counsel, for your argument. The matter just argued will be submitted. And we'll next hear argument in Sylvia.
judges: Gibson, Rymer, Clifton